UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENNIS FLORER,

Plaintiff,

v.

WILL MILLER, et al.,

Defendants.

Case No. C11-1271-RAJ-JPD

REPORT AND RECOMMENDATION

I. INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court on defendants' motion for summary judgment in this 42 U.S.C. § 1983 civil rights action. Plaintiff Dennis Florer, a state prisoner proceeding *pro se* and IFP, is currently confined at the Monroe Correctional Complex, Intensive Management Unit, in Monroe, Washington. In his amended complaint, plaintiff alleges that the defendants, fifteen Department of Corrections ("DOC") employees, retaliated against him for filing grievances or appealing his inmate classification in violation of his First Amendment rights. Dkt. 23. Defendants filed the instant motion for summary judgment on July 11, 2012, Dkt. 43, to which plaintiff filed a response on August 1, 2012. Dkt. 45. The Court, having reviewed the parties' briefing, the governing law, and the balance of the record, recommends that the defendants' motion, Dkt. 43, be GRANTED, and that this case be DISMISSED.

## II. JURISDICTION

Under 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's federal claims. As all claims arose in this judicial district, venue is proper under 28 U.S.C. § 1391(b).

## III. BACKGROUND

### A. Factual History

Plaintiff's claims ultimately stem from the following observation report submitted by Corrections Officer ("C/O") Nathan Spoo on January 5, 2011, regarding comments plaintiff made to him about psychological associate Ms. Lindsay McIntyre:

> On 7-5-11 at approximately 2215 I was conducting a tier check and collecting offender mail when offender Florer, Dennis DOC # 915539 engaged me in a conversation about a kite that he had sent the night prior. He stated that a kite he had sent Dr. Quirk had been seen by "that bitch McIntyre in mental health." He went on to describe her a "sexual predator" and wanted to make sure his grievance form was going to be placed in the grievance box and not seen by her. Offender Florer was very agitated and was very intense with his tone and demeanor when talking with me. It is obvious to me that offender Florer poses a threat to Mrs. McIntyre and should be watched closely.

Dkt. 43, Ex. 2, Att. B.

The grievance plaintiff mentioned to C/O Spoo claimed that "[t]oday I was informed by 2nd shift floor staff working the top tier that counsel 'Dady' want (sic) to see me and was placed in the attorney visiting booth. However, it was McIntyre, who offered to show me her 'breasts' and since I'm being released soon she said she would show me her 'tatoo (sic) and piercing down there.'" Dkt. 43, Ex. 2, Att. D. Finally, he wrote, "I will not be having any relationships with prison employees in or out of prison." *Id.*

The next day, a weekly Level Review Committee meeting was held to assess plaintiff's eligibility for promotion or demotion pursuant to DOC Policy 320.255. Dkt. 43, Ex. 1 (McIntyre Decl.) at ¶ 6. Correctional Unit Supervisor ("CUS") William Miller, who was serving as a non-voting member of the Level Review Committee, explains in his declaration that promotions and demotions of an offender are based upon factors such as infraction history,

cell cleanliness, compliance with that offender's Individual Behavior Management Plan ("IBMP"), overall behavior and attitude, and observation reports submitted by staff. *See* Dkt. 43, Ex. 2 at ¶ 6 (Miller Decl.). Specifically, each offender has a counselor assigned who obtains feedback from unit staff about their behavior, and then conveys this information, along with their own observations regarding the offender's behavior, during the weekly meeting. *See id*. at ¶ 7. A vote is then held as to whether to demote the offender, promote the offender, or maintain their current level. *See id.* Pursuant to DOC Policy 320.255, if an offender's program level/step is demoted, or the offender's promotion request is denied, that offender may appeal the demotion/denial to the appropriate Unit Supervisor. Dkt. 43, Ex. 2 (Miller Decl.) ¶ 12; Dkt. 43, Ex. 2, Att. A (copy of DOC 320.255). At all times relevant to plaintiff's complaint, CUS Miller was serving as the Unit Supervisor. Dkt. 43, Ex. 2 (Miller Decl.) ¶ 1.

During the July 6, 2011 meeting, the members discussed Mr. Spoo's report and observations from the previous day. Ms. McIntyre, who was also present at the meeting, and CUS Miller both assert in their declarations that plaintiff was demoted from Level 3 to Level 2 for 30 days due to "inappropriate communication with staff" based on the information in Mr. Spoo's report. Dkt. 43, Ex. 1 (McIntyre Decl.) ¶ 6; Dkt. 43, Ex. 2 (Miller Decl.) ¶ 9. Similarly, the Chronological Event (the "chrono") from the Offender Management Network Information ("OMNI") system provides that plaintiff "has been demoted to Level 2, 7/6/11 for 30 days due to inappropriate communication with staff on 7/5/11. Eligible to request Level 3 on 8/3/11." Dkt. 43, Ex. 2, Att. C.

Ms. McIntyre also asserted in her declaration that "at the time of Mr. Florer's demotion, the only knowledge I had of a grievance being filed against me by Mr. Florer was the brief mention of it in C/O Spoo's observation report. I had not seen the grievance that he claimed to have filed against me and was unaware of the content of the grievance." Dkt. 43, Ex. 1 at ¶ 7 (McIntyre Dec.). She further asserted that plaintiff "was demoted because the Level Review

Committee agreed that his behavior was unacceptable and warranted a demotion. He was not demoted in retaliation for filing a grievance against me." *Id.*

Meanwhile, in response to plaintiff's grievance alleging sexual misconduct, a Prison Rape Eliminate Act ("PREA") investigation was initiated. Dkt. 43, Ex. 2, Att. D. According to a November 9, 2011 letter to plaintiff from the DOC Health Services Administrator, the investigation was completed with a finding that plaintiff's allegations were "unsubstantiated."

On July 13, 2011, plaintiff requested a level promotion from Level 2 to Level 3. Dkt. 43, Ex. 2 (Miller Decl.) ¶ 11. According to the applicable chrono, plaintiff's request to promote to Level 3 was denied by the Level Review Committee because plaintiff was "not eligible to request Level 3 until 8/3/11," based upon the earlier incident. Dkt. 43, Ex. 2, Att. E.

On July 19, 2011, plaintiff appealed his July 6, 2011 demotion to CUS Miller. Dkt. 43, Ex. 2, Att. F. The relevant chrono provides that plaintiff's "demotion [was] reduced [by CUS Miller] to 15 days, eligible to request level 3 7/20/11," instead of August 3, 2011. *Id.* In plaintiff's written appeal to Mr. Miller, however, plaintiff also wrote that "[a]t this point, you are the master of your and your entire crew's retaliation lawsuit for grievances logs 1113315 for my whistle blowing on one of your crew." Dkt. 43, Ex. 2 (Miller Decl.), Att. G. Mr. Miller believed that this statement constituted intimidation. As a result, Mr. Miller infracted plaintiff for "using physical force, intimidation or coercion against any person, on July 19, 2011" in violation of WAC 137-25-030(663).

Specifically, Mr. Miller explains in his declaration that he interpreted plaintiff's statement "as if he was telling me to act positively on his appeal or he would file a lawsuit against me and others. Because of this, I infracted him with a WAC 663 . . . on July 19, 2011. Before I infracted Mr. Florer for his statement in his appeal of the demotion, I first responded to his appeal and reduced his demotion time by 50 percent. I then wrote the infraction." Dkt. 43, Ex. 2 (Miller Decl.) at ¶ 13. Mr. Miller further explained that "it is my understanding that this infraction was later dismissed. I do not know why the infraction was dismissed as once an

infraction is dismissed it is erased from our system." *Id*. at ¶ 14. Mr. Miller asserts that he "did not write the infraction above in retaliation for Mr. Florer appealing the decision of the Level Review Committee . . . although I upheld the decision of the Level Review Committee, I also reduced the sanction received by Mr. Florer by 50 percent. It wouldn't make sense for me to reduce his demotion time if I were truly retaliating against him as he suggests." *Id*.

On July 20, 2011, plaintiff requested a promotion to Level 3. *Id*. at ¶ 15. According to the relevant chrono, plaintiff's request to promote to Level 3 was "denied by the unit team, due to recent infraction of WAC 663" entered by Mr. Miller the day before. Dkt. 43, Ex. 2, Att. H. The defendants also claim that plaintiff's request for a promotion was also denied because he had a negative interaction with MCC Correctional Records Specialist Diana Horton during a central file review on July 20, 2011, when she informed plaintiff that when she had audited his file "there was an error in his jail credits by four days thus changing his date by 2 days." *Id.* at 2. Plaintiff became very angry and started to yell and flail his arms. *See id.* The chrono denying plaintiff's request, however, does not mention this incident. *Id*. at 1.

Mr. Miller asserts that on October 14, 2011, plaintiff was promoted back to Level 3 based upon his improved behavior. Dkt. 43, Ex. 2 (Miller Decl.) at ¶ 16. Mr. Miller argues that "the demotions/denials of promotions received by Mr. Florer were not done in retaliation," but were "based on his behavior and DOC policy 320.255." *Id.* at ¶ 17.

B. Procedural History

Plaintiff filed this § 1983 action on September 7, 2011. Dkt. 9. The Court entered an Order directing service on the six defendants named in plaintiff's complaint on that same date. Dkt. 10. On January 6, 2012, plaintiff requested leave to file an amended complaint in order to name additional defendants and amend his claims against current defendants based upon information he received in response to his discovery requests. Dkt. 17 at 2-3. The Court granted plaintiff's motion on January 30, 2012. Dkt. 20.

Plaintiff filed his amended complaint on March 1, 2012, naming fifteen DOC employees as defendants in their individual and official capacities due to their activities as members of the Level Review Committee at MCC on July 6, 2011, or July 20, 2011. Dkt. 23. Specifically, plaintiff's amended complaint requested injunctive relief, declaratory relief, and monetary damages. *See id*. at 13. The Court directed that plaintiff's amended complaint be served on the defendants on April 4, 2012. Dkt. 27.

On July 11, 2012, the defendants filed the instant motion for summary judgment. Dkt. 43. Plaintiff filed a response to the defendants' motion on August 1, 2012. Dkt. 45. Thus, defendants' motion is ripe for this Court's review.

C. Plaintiff's Federal Claims

(1) Plaintiff alleges that on July 6, 2011, defendants Sergeant Scott Hankins, Secretary Michelle Henderling, Correctional Specialist Sue Collins, C/O Michael Bowling, Counselor Harold Archibald, C/O Beau S. Jones, C/O Burton Ballweber, psychologist Lindsey McIntyre, psychologist Ryan Quirk (and his successor Tanya Browne), and C/O Nathan Spoo violated his "First Amendment right to file grievances and have chilled plaintiff's First Amendment rights and did not reasonably advance a legitimate correctional goal" when they demoted him to Level 2, confiscated his radio, and denied him a promotion to level 4 for 90 days based upon their finding that his July 5, 2011 grievance constituted "inappropriate communication." Dkt. 23 at 7, 11.[1]

(2) Plaintiff asserts that CUS Miller's WAC 663 infraction constituted "retaliatory action for an assertion of a lawsuit," violated "plaintiff's [First Amendment right to] free speech," and chilled his First Amendment rights without advancing a legitimate correctional goal. *See id*. at 9, 11.

(3) Plaintiff alleges that the July 20, 2011 decision to maintain plaintiff at Level 2 by

[1] Although plaintiff asserts in his complaint that he was demoted for 90 days, the evidence shows that plaintiff was demoted for only 30 days. *See* Dkt. 43, Ex. 2, Att. C. As mentioned above, even this 30-day demotion was later reduced by CUS Miller.

defendants Captain Ken Bratten, C/O Mike Bowling, Secretary Mary Williams, Correctional Specialist Sue Collins, Counselor Todd Saunders, and psychologist Ryan Quirk (and his successor Tanya Browne), also constituted retaliation for plaintiff's assertion that he would "sue prison employees in [his July 13, 2011] appeal, and for filing grievance log 111315," and chilled plaintiff's First Amendment rights without advancing a legitimate correctional goal. *Id.* at 9, 11.

## IV. DISCUSSION

### A. Standard of Review on Summary Judgment

Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party. *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving party's claim, or by establishing that the nonmoving party does not have enough evidence of an essential element to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the

veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of a scintilla of evidence in support of the plaintiff's position is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party's failure of proof concerning an essential element of its case necessarily "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. Retaliation

In order to sustain an action under § 1983, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Here, the constitutional violation alleged by the plaintiff is retaliation for his exercise of his First Amendment rights. To prevail on a retaliation claim under § 1983, a plaintiff must show that he was retaliated against for exercising his constitutional rights, that the retaliatory action chilled the exercise of his First Amendment rights, and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*. 31 F.3d 813, 816 (9th Cir. 1994). The Ninth Circuit has summarized the elements of prisoner's First Amendment retaliation claim as follows:

"(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment right, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68.

With respect to the fourth requirement that a plaintiff demonstrate that adverse action chilled the prisoner's exercise of his First Amendment rights, plaintiff "does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill *or* silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 568–69) (emphasis in original). Alternatively, a plaintiff may allege facts showing that the defendants *intended* to chill the plaintiff's First Amendment rights. *Mendocino Env'l Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). Finally, in order to survive summary judgment, the plaintiff bears the burden of showing that there was no legitimate penological objective to the defendant's actions. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

C. Defendants' July 6, 2011 Decision to Demote Plaintiff to Level 2 Based Upon Plaintiff's "Inappropriate Communication" Did Not Constitute Retaliation

Plaintiff first claims that defendants Hankins, Henderling, Collins, Bowling, Archibald, Jones, Ballweber, McIntyre, Quirk, and Spoo are liable for retaliation based upon their participation in his Level Review Committee meeting on July 6, 2011. Specifically, he asserts that the defendants violated his "First Amendment right to file grievances and have chilled plaintiff's First Amendment rights and did not reasonably advance a legitimate correctional goal" when they demoted him to Level 2, confiscated his radio, and denied him a promotion from Level 3 to Level 4 based upon their finding that his conversation with C/O Spoo on July 5, 2011 constituted "inappropriate communication." Dkt. 23 at 7, 11.[2]

[2] Although plaintiff provides in his complaint that he was demoted for 90 days, the relevant chrono provides that plaintiff was demoted for only 30 days. *See* Dkt. 43, Ex. 2, Att. C. Plaintiff also asserts that he lost permission to use his radio as part of this demotion, because the use of radios is only permitted for inmates at level 3 or level 4 pursuant to DOC policy. See Dkt. 42, Ex. 2, Att. A (Policy 320.255).

With respect to the July 6, 2011 Level Review Committee meeting, CUS Miller asserts in his declaration that the committee members based their decision to demote plaintiff from Level 3 to Level 2 for 30 days on the description of plaintiff's behavior set forth in C/O Spoo's report, which the committee considered "inappropriate communication with staff." *See id.* at 9. CUS Miller points out that the chrono from the OMNI system also confirms that plaintiff was "demoted to Level 2, 7/6/11 for 30 days due to inappropriate communication with staff on 7/5/11. Eligible to request Level 3 on 8/3/11." Dkt. 43, Ex. 2, Att. C. Ms. McIntyre similarly explains in her declaration that the only knowledge she had regarding plaintiff's grievance at the time of the meeting was the brief mention of it in C/O Spoo's report, as she had not read the grievance and was otherwise unaware of its content. Dkt. 43, Ex. 1 (McIntyre Decl.) ¶ 7. Thus, she asserts that plaintiff was not demoted in retaliation for filing a grievance against her. *See id.*

Even viewing the facts in the light most favorable to the plaintiff, the Court finds that the defendants did not retaliate against plaintiff for filing a grievance against Ms. McIntyre. Although plaintiff has established that adverse action was taken against him by the defendants on July 6, 2011 when he was demoted from level 3 to level 2, he has not demonstrated that this action was taken *because* plaintiff had exercised his First Amendment right to file grievances. On the contrary, the defendants have provided substantial evidence confirming that plaintiff was demoted based upon his conversation with C/O Spoo, in which he used derogatory language to describe Ms. McIntyre and appeared so "agitated" and "intense" that C/O Spoo feared plaintiff posed a threat to her, and did not read or otherwise consider the contents of plaintiff's grievance during the Level Review Committee meeting. Notably, plaintiff does not deny the allegations contains in C/O Spoo's observation report. Because the evidence in this case shows that plaintiff was not demoted because he filed a grievance against Ms. McIntyre, plaintiff's retaliation claim fails.

In his responsive brief, plaintiff contends that the Court should consider the timing of the defendants' decision to demote plaintiff as circumstantial evidence of retaliatory intent. Dkt. 45 at 8-9. Even if the Level Review Committee did demote plaintiff based upon his grievance filed against Ms. McIntyre, however, plaintiff has not shown that his 30-day demotion "chilled" his exercise of his First Amendment rights in any way. On the contrary, after plaintiff's request for a promotion from level 2 to level 3 was denied on July 13, 2011 based upon this incident, plaintiff appealed his July 6, 2011 demotion to CUS Miller on July 19, 2011. Dkt. 43, Ex. 2, Att. F. Plaintiff even obtained a favorable result, because CUS Miller reduced his demotion from 30 to 15 days, thereby making plaintiff eligible for promotion on July 20, 2011, instead of August 3, 2011. *See id.* Plaintiff has not alleged any facts sufficient to establish a chilling of his First Amendment rights either by showing that the adverse action "would chill *or* silence a person of ordinary firmness from future First Amendment activities" or showing that the "defendants *intended* to chill Plaintiff's First Amendment rights." *Mendocino Env'l Ctr.*, 192 F.3d at 1300.

Finally, plaintiff has not shown that the defendants' conduct did not reasonably advance a legitimate correctional goal, such as the preservation of institutional order and discipline. *See Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994). Especially in light of C/O Spoo's concern that plaintiff's language, demeanor, and tone demonstrated that plaintiff posed a threat to Ms. McIntyre, the defendants could reasonably take steps to alleviate any potential threat posed by the plaintiff to Ms. McIntyre or other staff members. Dkt. 43, Ex. 2, Att. B. Thus, the defendants are entitled to summary judgment on this claim.

D. <u>CUS Miller's Infraction for "Intimidation" by Plaintiff Was Not Retaliation</u>

It is undisputed that in plaintiff's July 19, 2011 appeal of his demotion to CUS Miller, he wrote that "At this point, you're the master of your and your entire's crew's retaliation lawsuit for grievances logs 1113315 for whistle blowing on one of you (sic) crew." Dkt. 43, Ex. 2, Att. G. Nevertheless, plaintiff contends that when CUS Miller issued a WAC 663

infraction for "intimidation" based upon this statement, CUS Miller's conduct constituted "retaliatory action for an assertion of a lawsuit," violated "plaintiff's [First Amendment right to] free speech," and chilled his First Amendment rights without advancing a legitimate correctional goal. Dkt. 23 at 9, 11.

The defendants respond that CUS Miller could reasonably infract plaintiff for his inclusion of a threat in his written appeal. Dkt. 43 at 3. Specifically, CUS Miller states in his declaration that "I took this statement from him as intimidation/coercion on his part towards myself. I felt as if he was telling me to act positively on his appeal or he would file a lawsuit against me and others. Because of this, I infracted him with a [WAC 137-25-030(663)], using physical force, intimidation or coercion against any person, on July 19, 2011." Dkt. 43, Ex. 2 at ¶ 13 (Miller Decl.). However, "before I infracted Mr. Florer for his statement in his appeal of the demotion, I first responded to his appeal and reduced his demotion time by 50 percent. I then wrote the infraction." *Id*. This infraction was later dismissed, although the reason was erased from the prison's system at the time of the dismissal. *See id*. at ¶ 14.

The Court finds that plaintiff has also failed to meet his burden with respect to this claim. Although CUS Miller took adverse action against plaintiff by infracting him, there is no evidence that he did so based upon "protected conduct" by the plaintiff. Plaintiff has no right to attempt to influence the outcome of his appeals by threatening legal action in the event he does not receive a favorable outcome, or making any other kind of intimidating or coercive statements to prison staff. *See Brodheim*, 584 F.3d at 1273 (recognizing that a grievance presented in a way that posed "a substantial threat to security and discipline" would be unprotected). Similarly, there is no evidence that CUS Miller's action chilled plaintiff's First Amendments rights in any way, or failed to advice a legitimate correctional goal. *See Florer v. Frakes*, 2012 WL 1565393, at *4 (E.D. Wash. Mar. 27, 2012) ("DOC has a legitimate penological reason to prohibit prisoners from using intimidation and coercion. And Florer was punished for his intimidating and coercive conduct, not merely for speaking."). The Court

finds that even viewing the record in the light most favorable to the plaintiff, plaintiff's threats toward CUS Miller detracted from the maintenance of an orderly and civil environment necessary to maintain a safe facility, and CUS Miller's efforts to prohibit that behavior clearly served a legitimate penological interest. Thus, the defendants are also entitled to summary judgment on this claim.

E. Defendants' July 20, 2011 Decision Not to Promote Plaintiff to Level 3 Based Upon His WAC 663 Infraction Did Not Constitute Retaliation

Finally, as mentioned above, plaintiff requested a promotion to Level 3 on July 20, 2011, the first day that he was eligible following CUS Miller's reduction of his demotion time by fifteen days. Dkt. 43, Ex. 2 at ¶ 15 (Miller Decl.). On that date, the Level Review Committee denied plaintiff's request based upon the WAC 663 infraction issued by CUS Miller on July 19, 2011, which was still pending. *See id.* Specifically, the relevant chrono reflects that "Offender Florers request to promote to Level 3 has been denied by the unit team, due to recent infraction of WAC 663." Dkt. 43, Ex. 2, Att. H.

Plaintiff claims that the Level Review Committee's decision not to promote him on July 20, 2011, and maintain plaintiff at Level 2 based upon the WAC 663 infraction issued by CUS Miller, also constituted retaliation. Specifically, plaintiff asserts that defendants Bratten, Bowling, Williams, Collins, Saunders, and Quirk denied his request for a promotion based upon his prior statement that he would "sue prison employees in [his July 13, 2011] appeal, and for filing grievance log 111315," and thereby chilled plaintiff's First Amendment rights without advancing a legitimate correctional goal. Dkt. 23 at 9, 11.

The defendants respond that no adverse action was taken against the plaintiff on July 20, 2011 because although plaintiff's request for promotion was denied based upon the infraction issued by CUS Miller, that infraction was later dismissed. Dkt. 43 at 7. In addition, defendants argue that because plaintiff was not demoted, no adverse action was taken. *See id.* Even if the denial of a promotion constituted adverse action, however, defendants assert that

plaintiff has "failed to show a connection between the denial of his promotion or his infraction and any retaliation," and "the timing of staff actions, alone is not enough to establish this element." *Id*. (citing *Pratt*, 65 F.3d at 808).

More importantly, defendants assert that the pending infraction was only one of the reasons why plaintiff's promotion was denied. Specifically, defendants point out that Ms. Diana Horton issued a report on July 20, 2011 concerning a conversation she had with plaintiff that day after conducting a file review and discovering several errors with respect to his jail credits. Dkt. 43, Ex. 2, Att. H. She reported that "as soon as I started talking he started yelling and demanding . . . The offender would not stop yelling and flailing his arms so I let him know that I would get the Sgt if he did not want to look at this file." *Id.* The defendants assert that plaintiff's "uncontrollable screaming and yelling at Ms. Horton about his release date was certainly a controlling factor. Considering this behavior, the Committee had ample support for the decision not to promote Mr. Florer even in the absence of the infraction at issue." *Id*. at 8.

As a threshold matter, the Court cannot agree with the defendants that the denial of a promotion back to level three, under the unique circumstances of this case, did not constitute adverse action. However, the Court agrees with the defendants that plaintiff has not demonstrated the element of causation. As discussed above, plaintiff has not shown that his intimidating and coercive language in his appeal constituted "protected conduct." *See Brodheim*, 584 F.3d at 1273. Moreover, plaintiff has not shown he was denied a promotion based solely upon his infraction, and not also because of his conduct Ms. Horton on July 20, 2011. The Level Review Committee could reasonably decide that declining to promote plaintiff to level three, in light of his intimidating statement made to CUS Miller as well as his behavior toward Ms. Howard, advanced legitimate correctional goals. Accordingly, the defendants are entitled to summary judgment on this claim.

V. CONCLUSION

Defendants have met their burden of demonstrating that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. Plaintiff has therefore failed in all instances to allege facts sufficient to form a constitutional violation. Accordingly, the Court recommends that the defendants' motion for summary judgment, Dkt. 43, be GRANTED. A proposed order accompanies this Report and Recommendation.

DATED this 29th day of October, 2012.

JAMES P. DONOHUE
United States Magistrate Judge